Rel: April 19, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————

### SC-2023-0735

————————————

**Ex parte City of Montgomery, Kenneth F. Davis, Joseph D. Favor, and Michael T. Shirah**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Frank Knighton, as administrator and personal representative of the Estate of Holly Rene Knighton, deceased**

**v.**

**City of Montgomery, Kenneth F. Davis, Joseph D. Favor, and Michael T. Shirah)**

**(Montgomery Circuit Court: CV-20-900444)**

STEWART, Justice.

The City of Montgomery ("the City"), Kenneth F. Davis, Joseph D. Favor, and Michael T. Shirah have filed a petition requesting that this court issue a writ of mandamus directing the Montgomery Circuit Court ("the trial court") to grant their motion for a summary judgment, which was filed in the underlying action brought against them by Frank Knighton, as administrator and personal representative of the estate of Holly Rene Knighton, deceased, on the ground that they are entitled to immunity. For the reasons explained below, we grant the petition.

Facts and Procedural History

On March 27, 2018, Davis, Favor, and Shirah ("the detectives"), each of whom at the time was employed as a detective by the City's Police Department, responded to a call regarding an allegedly stolen vehicle at a home on Kiwanis Street. When the detectives arrived at the location, they approached the driveway with Shirah in front. According to Shirah, he observed the allegedly stolen vehicle at the rear of the home. As the detectives walked down the driveway, Shirah said, he noticed an individual, later identified to be Holly Knighton ("Knighton"), running to the back of the home and exiting the home. Shirah notified Knighton that they were police officers and commanded her to stop. The detectives

quickly approached the vehicle, with Shirah in front with his weapon drawn.

After Knighton exited the home, she ran toward the vehicle and entered it. Before she could close the door of the vehicle, Favor and Shirah arrived at the vehicle and attempted to grab the door and pull it open while Davis approached the passenger side of the vehicle. According to Davis, he took a position near the passenger side of the vehicle to monitor the surroundings because, he testified, a person of interest for automobile thefts and methamphetamine sales lived next door. Favor and Shirah commanded Knighton to exit the vehicle; however, Knighton shifted the vehicle into reverse and accelerated. According to Favor, he heard a "clicking noise" before he heard the vehicle's engine engage and Knighton shift into reverse. Similarly, Davis stated that he heard a "clunk."

When the vehicle accelerated in reverse, Favor and Shirah were both knocked down, with Favor being knocked down near the tire on the driver's side, in front of the vehicle. According to Shirah, the vehicle could not have exited the driveway without hitting Favor again. However, before Knighton could exit the driveway, Davis discharged his weapon, striking her several times and ultimately killing her. Davis stated, in his

affidavit supporting the motion for a summary judgment, that he lost sight of Favor and fired his weapon because, he said, "Favor was subject to being seriously wounded or killed if the vehicle were placed in drive." However, in his prior deposition, Davis testified that he had lost sight of Favor and fired his weapon because "it appeared that [Favor] was being run over by the vehicle."

Frank Knighton, as the administrator and personal representative of Knighton's estate ("the plaintiff"), sued the City and the detectives, asserting wrongful-death claims against the detectives and seeking to hold the City vicariously liable for the detectives' conduct. The detectives and the City moved for a summary judgment based on peace-officer immunity pursuant to § 6-5-338(a), Ala. Code 1975, and State-agent immunity pursuant to Ex parte Cranman, 792 So. 2d 392 (Ala. 2000) (plurality opinion), as modified in Hollis v. City of Brighton, 950 So. 2d 300 (Ala. 2006).[1] The trial court denied the motion, and this petition followed.

_____

[1]Although Cranman was a plurality decision, the restatement of law pertaining to State-agent immunity set forth in Cranman was subsequently adopted by this Court in Ex parte Rizk, 791 So. 2d 911 (Ala. 2000), and Ex parte Butts, 775 So. 2d 173 (Ala. 2000). See also § 36-1-12, Ala. Code 1975 (codifying the restatement originally set forth in

4

Standard of Review

"'"While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus."' Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (quoting Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000)) (emphasis omitted). A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate '"(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."' Ex parte Nall, 879 So. 2d at 543 (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).

"In reviewing the denial of a summary-judgment motion based on immunity, this Court must 'view the [materials] in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party, considering only the evidence before the trial court at the time it denied the motion.' Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002) (citing Ex parte Rizk, 791 So. 2d at 912).

"Moreover, when reviewing by mandamus petition claims alleged to be subject to the defense of State-agent immunity, as set forth in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000) (plurality opinion), this Court 'first review[s] the facts surrounding the activities of the agent. If those facts support immunity and the burden therefore shifts to the claimant, we review any facts offered to establish an exception

_____

Cranman). In Hollis, this Court amended the restatement of State-agent immunity to incorporate the peace-officer immunity provided in § 6-5-338.

5

to immunity as prescribed in <u>Cranman</u> to determine whether that exception is supported by substantial evidence.' <u>Ex parte Utilities Bd. of Foley</u>, 265 So. 3d 1273, 1281 (Ala. 2018) (citing <u>Ex parte Price</u>, 256 So. 3d 1184 (Ala. 2018))."

<u>Ex parte Runnels</u>, 364 So. 3d 979, 982 (Ala. 2022) (footnote omitted).

## Analysis

The City and the detectives argue that the trial court erred in denying their motion for a summary judgment because, they argue, the detectives are entitled to peace-officer immunity pursuant to § 6-5-338(a) and State-agent immunity pursuant to <u>Cranman</u>, as modified by <u>Hollis</u>. Section 6-5-338(a) provides, in pertinent part: "Every peace officer ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."

In <u>Ex parte City of Montgomery</u>, 272 So. 3d 155, 160 (Ala. 2018), this court explained:

> "'The restatement of State-agent immunity as set out by this Court in <u>Ex parte Cranman</u> ... governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a). <u>Ex parte City of Tuskegee</u>, 932 So. 2d 895, 904 (Ala. 2005).' <u>Ex parte City of Montgomery</u>, 99 So. 3d 282, 292 (Ala. 2012). Specifically,

6

"'peace officers are afforded immunity by Ala. Code 1975, § 6-5-338(a), and the test for State-agent immunity set forth in <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000), as modified in <u>Hollis v. City of Brighton</u>, 950 So. 2d 300 (Ala. 2006) (incorporating the peace-officer-immunity standard provided in § 6-5-338(a) into the State-agent-immunity analysis found in <u>Cranman</u>).... Under that formulation,

"'"'[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

"'"'....

"'"'(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.'"

"'<u>Hollis</u>, 950 So. 2d at 309 (quoting and modifying <u>Cranman</u>, 792 So. 2d at 405). In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:

"'"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws,

7

rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

"'"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

"'Cranman, 792 So. 2d at 405.'

"Suttles v. Roy, 75 So. 3d 90, 94 (Ala. 2010) (emphasis omitted).

"'A State agent asserting State-agent immunity "bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." [Ex parte Estate of Reynolds,] 946 So. 2d [450,] 452 [(Ala. 2006)]. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable.'

"Ex parte Kennedy, 992 So. 2d 1276, 1282-83 (Ala. 2008); see also Wilson[ v. Manning], 880 So. 2d [1101,] 1111 [(Ala. 2003)] (noting that, when the burden at summary-judgment stage has shifted to the nonmovant, the nonmovant must present 'substantial evidence from which a reasonable juror could infer' the existence of the fact at issue)."

(Footnote omitted.)

To establish that the plaintiff's claims arose from a function that would entitle the detectives to State-agent immunity, the City and the detectives are required to "establish (1) that [the detectives] were peace officers (2) performing law-enforcement duties at the time of the [incident] and (3) exercising judgment and discretion." Ex parte City of Homewood, 231 So. 3d 1082, 1087 (Ala. 2017). If the City and the detectives can show that the detectives are entitled to State-agent immunity under this standard, then the burden of proof shifts to the plaintiff to show that one of the two Cranman exceptions apply.

The parties do not dispute whether the detectives were exercising judgment and discretion, within the line and scope of their duties as peace officers, as required by § 6-5-338 and Homewood. The detectives were responding to a call regarding an allegedly stolen vehicle and approached the vehicle, with at least one of the detectives announcing that they were police officers. Only whether Davis's use of deadly force fits within one of the two Cranman exceptions is disputed. Accordingly, the detectives are entitled to immunity unless the plaintiff can show that one of the two Cranman exceptions apply.

With respect to Favor and Shirah, the plaintiff has not argued that either of the two <u>Cranman</u> exceptions apply, presumably because neither engaged in the use of deadly force. The plaintiff focuses only on whether <u>Davis</u> acted beyond the scope of his authority or whether he violated § 13A-3-27, Ala. Code 1975. Thus, the plaintiff has not shown why Favor and Shirah should not be afforded immunity, and, as a result, the trial court erred when it denied the motion for a summary judgment as to them.

With respect to Davis, the plaintiff first contends that Davis acted beyond the scope of his authority by, he argues, violating Montgomery Police Department Rules and Regulations, Policy 2.206.[2] Policy 2.206 states: "Deadly force may be used in defense of life when authorized by State law in the performance of lawful duty <u>when all other reasonable means have been exhausted</u>." (Emphasis added.) The plaintiff argues that the detectives approached the vehicle with their weapons drawn and, as a result, "did not leave room for any means other than deadly force, essentially violating [Montgomery Police Department] Rules and

---

[2]The plaintiff references both Policy 3.3.2 and Policy 2.206. However, only Policy 2.206 was in effect at the time of the conduct giving rise to his claims.

Regulations 2.206." Answer at 21. However, no rules or regulations cited by the plaintiff prohibited the detectives from drawing their weapons, particularly when approaching a potentially dangerous situation. Moreover, Davis did not have his weapon drawn when approaching the vehicle or at any time prior to firing his weapon. Thus, the plaintiff's argument is without merit.

Next, the plaintiff argues that Davis's use of deadly force violated § 13A-3-27, which provides, in relevant part:

> "(b) A peace officer is justified in using deadly physical force upon another person when and to the extent that he reasonably believes it necessary in order:
>
> "....
>
> "(2) To defend himself or a third person from what he reasonably believes to be the use or imminent use of deadly physical force."

The plaintiff contends that there is a question of material fact as to whether Davis reasonably believed that he was defending Favor from the use of deadly physical force. Specifically, he argues that Davis's testimony, when viewed in light most favorable to him, suggests that, although Favor was on the ground directly in front of the vehicle, Davis had not heard any sound indicating that Knighton had shifted the

11

transmission of the vehicle from reverse into drive. Thus, according to the plaintiff, there was at least a material question of fact as to whether Favor was in imminent danger of being run over by Knighton. We disagree.

The undisputed facts indicate that when the detectives attempted to stop Knighton, she entered the allegedly stolen vehicle and attempted to flee. As the detectives surrounded the vehicle, she ignored their commands to exit the vehicle and, instead, accelerated the vehicle in reverse, knocking down Favor and Shirah and leaving Favor in a position on the ground in front of the vehicle near the driver's side front tire. Undisputed testimony further indicated that Knighton's only route of escape would have required her to drive straight ahead and, thus, over Favor. Under the circumstances, it is clear from the undisputed facts that Favor was in a position of imminent life-threatening peril, and we reject the plaintiff's contention that, under such circumstances, any applicable law or regulation required Davis to wait until Favor was actively being run over before he acted. See Thurmond v. City of Huntsville, 904 So. 2d 314, 320 (Ala. Civ. App. 2004) ("[D]iscretionary-function immunity must exist because a police officer should not be required to 'ponder and

12

ruminate over decisions that should be made in a split second.'" (citation omitted)); see also Blackwood v. City of Hanceville, 936 So. 2d 495, 507-08 (Ala. 2006). Thus, the plaintiff has not shown by substantial evidence that one of the two Cranman exceptions applies, and, as a result, the trial court erred when it denied the motion for a summary judgment as to Davis.

Finally, because all the detectives are entitled to immunity, the City is also entitled to summary judgment. See Industrial Dev. Bd. of City of Montgomery v. Russell, 124 So. 3d 127, 137 (Ala. 2013) ("'"[T]he vicarious liability of a putative master under the rule of respondeat superior depends upon the liability of the putative servant."'" (citations omitted)); and Ex parte City of Gadsden, 781 So. 2d 936, 940 (Ala. 2000) (holding that when a peace officer is immune under § 6-5-338(a), that immunity is extended to the municipality employing the officer).

## Conclusion

For the reasons stated above, we conclude that the detectives are each entitled to peace-officer immunity pursuant to § 6-5-338 and State-agent immunity pursuant to Cranman, as modified by Hollis, and that that immunity extends to the City. Accordingly, we grant the mandamus

petition and direct the trial court to enter an order granting the City and the detectives' motion for a summary judgment.

PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Shaw, Bryan, Sellers, Mendheim, Mitchell, and Cook, JJ., concur.

Wise, J., recuses herself.